John Jay HOOKER, et al.

v.

James R. SASSER, et al.

No. 3–94–0750.

United States District Court,
M.D. Tennessee,
Nashville Division.

Jan. 9, 1995.

John Jay Hooker, Nashville, TN, pro se.

Steve Wimpee, Smyrna, TN, pro se.

Julia Wimpee, Smyrna, TN, pro se.

William Valerius Sanford, Jr., John Knox Walkup, Gullett, Sanford, Robinson & Mar-tin, Nashville, TN, for James R. Sasser and Friends of Jim Sasser.

Paul C. Ney, Jr., Doramus & Trauger, Nashville, TN, for William H. Frist, and Bill Frist for Senate.

## MEMORANDUM

HIGGINS, District Judge.

The Court has before it the motion (filed December 15, 1994; Docket Entry No. 20) to dismiss of the defendants, James R. Sasser and Friends of Jim Sasser, as well as their memorandum (filed December 15, 1994; Docket Entry No. 21) in support.[1] Also before the Court is the motion (filed December 22, 1994; Docket Entry No. 22) to dismiss of the other named defendants, William H. Frist and Bill Frist for Senate, who have adopted and incorporated by reference the above-cited memorandum in support.

The plaintiffs have not responded to these motions within the designated time and therefore they are deemed to have no objection. Rule 8(b)(3), Local Rules of Court.

The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

For the reasons stated below, the Court shall grant the defendants' motions to dismiss.

### I.

This cause of action arises out of a dispute concerning campaign contributions collected for two candidates for the office of United States Senator from the State of Tennessee in the November 8, 1994, election. The defendants, Messrs. Sasser and Frist, were candidates for this office,[2] as was the plaintiff, John Jay Hooker. The other two named defendants, Friends of Jim Sasser and Bill Frist for Senate, are the authorized principal

---

1. On September 21, 1994, these defendants filed a motion (Docket Entry No. 9) to dismiss and a memorandum (Docket Entry No. 10) in support, to which the plaintiffs submitted a response (filed October 11, 1994; Docket Entry No. 13). The other named defendants, William H. Frist and Bill Frist for Senate, also filed a motion (Docket Entry No. 16) on October 31, 1994, to dismiss for failure to state a claim upon which relief can be granted. The plaintiffs requested the Court's leave to file an amended complaint, *see* motion (filed September 28, 1994; Docket Entry No. 12), which was granted by the Court's order (Docket Entry No. 17) entered on November 21, 1994. The plaintiff's amended complaint (Docket Entry No. 18) was filed on November 28, 1994, and the motions before the Court were filed in response.

2. Mr. Frist emerged victorious from this Senate race.

campaign committees for Messrs. Sasser and Frist. The remaining plaintiffs, Steve Wimpee and Julia Wimpee, are registered voters and citizens of Tennessee.

In their amended complaint (filed November 28, 1994; Docket Entry No. 18), the plaintiffs allege that their rights, guaranteed by both the United States Constitution and the Constitution of the State of Tennessee, have been violated as a result of the defendants' conduct of soliciting, accepting and using campaign contributions from non-residents of Tennessee in their efforts to be elected to the United States Senate.[3] More specifically, the plaintiffs allege that the defendants' acceptance and use of funds contributed by non-residents of Tennessee dilutes the weight of their votes for the office of United States Senator from Tennessee, denies them the undivided loyalty of such Senator, and denies them the right to have their Senators exclusively elected by Tennessee citizens. Amended complaint ¶ 36.

In addition, plaintiff Hooker alleges that the defendants' conduct prevents his qualifications as a candidate for the office of United States Senator from being judged solely and exclusively by Tennessee citizens. *Id.* ¶ 38. As relief, the plaintiffs seek a declaratory judgment and an order prohibiting the defendants from further soliciting or accepting contributions from non-resident contributors.[4]

In their motions to dismiss, the defendants contend that the plaintiffs have failed to state a claim upon which relief can be granted in their amended complaint and, therefore, their cause of action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.

In their motions to dismiss, the defendants assert that the plaintiffs' claims are non-justiciable on three separate grounds: (1) the plaintiffs lack standing; (2) the plaintiffs' claims pose a political question which is inappropriate for judicial intervention; and (3) the plaintiffs' claims were rendered moot as a result of the November 8, 1994, election. Although each of these assertions has considerable merit, because the plaintiffs lack standing, the Court need not resolve the political question or mootness issues.[5]

Article III of the United States Constitution gives the federal courts jurisdiction only over "cases and controversies," of which the component of standing is an "essential and unchanging part." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351, 363–64 (1992). The party seeking to invoke the Court's jurisdiction must establish the necessary standing to sue before the Court may consider the merits of that party's cause of action. *Whitmore v. Arkansas,* 495 U.S. 149, 154, 110 S.Ct. 1717, 1722, 109 L.Ed.2d 135, 144–45 (1990). Accordingly, the defendants' contention that the plaintiffs' claims are non-justiciable because the plaintiffs lack standing is more accurately characterized as an attack on the Court's subject matter jurisdiction. As such, the Court interprets the defendants' motion with regard to this contention as a defense pursuant to Fed.R.Civ.P. 12(b)(1), rather than Fed.R.Civ.P. 12(b)(6).

The standing inquiry invokes both constitutional and prudential limitations on federal court jurisdiction. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 354 (1975). The United States Supreme Court has succinctly set forth the three elements which comprise "the irreduci-

---

3. The plaintiffs also purport to challenge the Federal Election Campaign Act of 1971, as amended, 2 U.S.C. § 431 *et seq.,* "insofar as it appears to both authorize and regulate out-of-state contributions." Amended complaint ¶ 1.

4. The Court previously denied the plaintiffs' application for preliminary injunctive relief. *See* order (Docket Entry No. 15) and memorandum (Docket Entry No. 14) entered October 21, 1994.

5. The Court's brief discussion about the political question issue in its prior memorandum is equally applicable here, however. *See* memorandum (Docket Entry No. 14) at 5. The Court noted that "the problem is peculiarly political in nature. It is not the function of federal judges to legislate the needed changes by judicial decree. The problem should be the subject of public debate and the changes enacted through the usual process between the Executive and Legislative branches." *Id.*

ble constitutional minimum of standing." *Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136, 119 L.Ed.2d at 364. Those indispensable elements are as follows: (1) the plaintiff must have suffered an injury in fact; (2) there must be a causal connection between the injury and the challenged conduct; and (3) it must be likely that a favorable decision will remedy the injury. *Id.* As further explained by the Supreme Court, an injury in fact must consist of "an invasion of a legally-protected interest" which is "concrete and particularized," as well as one which is actual or imminent and not simply " 'conjectural' or 'hypothetical.' " *Id.*

### III.

■ The Court finds that the plaintiffs' allegations of diluted voting power, denial of undivided loyalty, and denial of the right to have their Senators exclusively elected by Tennessee citizens do not identify any "concrete and particularized" injury which they have suffered or will suffer because of the defendants' conduct. Such generalized and conjectural allegations fall far short of the requirement of a "distinct and palpable injury." *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206, 45 L.Ed.2d at 356. As was the situation in *Froelich v. Federal Election Comm'n,* 855 F.Supp. 868, 870 (E.D.Va.1994), the plaintiffs' allegations "are conspicuously devoid of any claim that plaintiffs themselves have or will suffer injury-in-fact as a result of political contributions" from non-residents of Tennessee. In essence, these allegations merely suggest that Tennessee citizens may be injured as a result of contributions of non-citizens of Tennessee, which is unquestionably a generalized and hypothetical injury. The Court notes that although contributions can be made from sources outside the State

of Tennessee, *no one* residing outside of Tennessee *can vote* for a particular candidate.

■ Although plaintiff Hooker's specific allegation of being denied the right to have his qualifications as a Senate candidate judged exclusively by Tennessee citizens is particularized, this alleged injury is nevertheless hypothetical and conjectural. There is no evidence that prohibiting acceptance of contributions from non-citizens would have had any impact in the election of Senators whatsoever, much less that it would have enabled Mr. Hooker to be successful in his campaign. Moreover, as was the situation in *Whitmore, et al. v. Federal Election Comm'n,* D.Alaska, No. A94–289 CIV (December 8, 1994) at 10, Mr. Hooker has failed to establish the causal connection between his injury and the challenged conduct. Rather than being traceable to the defendants' conduct, the evidence indicates that Mr. Hooker's alleged injury results from the "independent action of some third party not before the court." *Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136, 119 L.Ed.2d at 364, namely, the non-citizens of Tennessee who have made contributions to the Sasser and Frist campaigns.[6] Finally, in light of the fact that the election is now history,[7] candidate Hooker's alleged injury cannot possibly be redressed by a favorable decision and, therefore, the final prong of the standing requirement cannot be fulfilled.

■ In addition to failing to fulfill the standing requirements of Article III, the plaintiffs' allegations fall far short of the related prudential principles established by the courts. The Supreme Court has held that an alleged harm which is "a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens" does not warrant the exercise of the court's jurisdiction.[8] *Warth,* 422 U.S. at 499, 95 S.Ct. at

---

6. The Court notes that Mr. Hooker has voluntarily refused to solicit and accept such contributions.

7. The Court notes that the plaintiffs' claims have also been rendered moot as a result of the November 8, 1994, election. Therefore, even if the plaintiffs had established the requisite standing, the defendants' motion pursuant to Fed.R.Civ.P. 12(b)(6) would have properly been granted.

8. The Court further explained that without the limitations of such prudential principles, "the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Warth,* 422 U.S. at 500, 95 S.Ct. at 2205–06, 45 L.Ed.2d at 355.

2205, 45 L.Ed.2d at 355. This is precisely the type of alleged harm posed by the plaintiffs' complaint. As was the situation in *Froelich*, 855 F.Supp. at 870, these alleged injuries are abstract and common to all voters or candidates in the state and, therefore, "lack the factual specificity needed for a court to make a decision." Furthermore, redressing the alleged injury is a task committed to the Congress, *id.*, and the Court declines interfering with the legislative branch of the government. Therefore, the Court concludes that, even if the plaintiffs had established the requisite elements of standing, prudential principles preclude invocation of the Court's decisional and remedial powers with regard to their claims.

### IV.

For the reasons set forth above, the Court shall grant the defendants' motions to dismiss.[9]

An appropriate order shall be entered.

### ORDER

In accordance with the memorandum contemporaneously entered, the Court grants the motion (filed December 15, 1994; Docket Entry No. 20) to dismiss of the defendants, James R. Sasser and Friends of Jim Sasser, as well as the motion (filed December 22, 1994; Docket Entry No. 22) to dismiss of the defendants, William H. Frist and Bill Frist for Senate.[1]

This action is dismissed with prejudice.

The entry of this order constitutes the judgment in this action.

It is so ORDERED.

---

9. As noted previously, the basis for dismissal of this cause of action shall be pursuant to Fed.R.Civ.P. 12(b)(1), as a result of the plaintiffs' lack of standing.

1. Because the defendants' contention that the plaintiffs' claims are non-justiciable due to lack of standing is more accurately characterized as an attack on the Court's subject matter jurisdiction, the Court regards the defendants' motion as a defense pursuant to Fed.R.Civ.P. 12(b)(1), rather than Fed.R.Civ.P. 12(b)(6).