**John Jay HOOKER, Plaintiff–Appellant,**

v.

**FEDERAL ELECTION COMMISSION, et al., Defendants–Appellees.**

**No. 00–5660.**

United States Court of Appeals, Sixth Circuit.

Oct. 11, 2001.

---

Before KENNEDY, GUY, and BOGGS, Circuit Judges.

PER CURIAM.

John Jay Hooker appeals dismissal of his action challenging the constitutionality of several campaign finance statutes administered by the Federal Election Commission. His action was dismissed, with prejudice, on the bases of issue preclusion and lack of standing. We affirm.

## I

Hooker's amended complaint alleged four counts. Count 1, broadly referring to the entirety of the Federal Election Campaign Act of 1971, as amended, codified at 2 U.S.C. § 431–455 ("FECA"), challenged the constitutionality of matching funds. This count alleged that Hooker's rights as a voter would be violated in the 2000 presidential election because matching funds are based on private contributions received by candidates and those private contributions are unconstitutional and inconsistent with a republican form of government. Specifically, as the district court quoted Hooker's amended complaint, matching funds are unconstitutional, because they are based on private contributions which are unconstitutional "under the Vth and XIVth Amendments as they discriminate among voters based upon wealth and thereby violate the 'one-man, one-vote' re-

quirement." The complaint further alleged that the campaign finance statutes are unconstitutional because Congress did not have power to enact them. Hooker argued that Congress has no power with respect to presidential elections beyond that specified in Article I, § 4 of the United States Constitution (which states in relevant part, "The Times, Place and Manner of holding elections for Senators and Representatives, shall be prescribed in each state by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations. . . .") The complaint asked the court to declare 2 U.S.C. § 431 *et seq.*, and 26 U.S.C. § 9001 *et seq.*, (the "Acts") unconstitutional "as they authorize 'matching funds' in Presidential elections."[1] The complaint also sought an injunction prohibiting the use of matching funds in the 2000 election.

Counts 2 and 3 alleged that campaign contributions from contributors outside the state are unconstitutional and that Senator Frist, Governor Sundquist and others violated Hooker's right under the Tennessee and United States constitutions to a "free and equal" election by accepting and using such interstate campaign contributions. The complaint asked that the court declare the FECA and, in particular, its preemption provision, 2 U.S.C. § 453, unconstitutional because it preempts state regulation and thus prohibits states from acting to exclude interstate contributions. The complaint also requested that the court enjoin use of these contributions in the 2000 senatorial election and compel the Governor and Attorney General of Tennessee to prohibit these contributions.

Count 4 added a series of political parties and candidates as defendants, on the basis that they were "soliciting, accepting and utilizing 'matching funds.'"

Hooker has challenged the constitutionality of out-of-state campaign contributions (Counts 2 & 3 in the present case) on two previous occasions. He first challenged their constitutionality in 1994. *See Hooker v. Sasser,* 893 F.Supp. 764, 765 (M.D.Tenn. 1995) (*"Hooker I"*). The district court in that case dismissed the lawsuit with prejudice pursuant to FED. R. CIV. P. 12(b)(1), for lack of standing. The court found that (1) Hooker and his co-plaintiffs had not alleged an injury-in-fact, (2) they had not alleged the requisite causal connection between his claimed injury and the defendants' conduct, and (3) any redress of the plaintiffs' alleged grievances was a matter for Congress and not the judiciary. Hooker filed a notice of appeal, but later requested and was granted a voluntary dismissal by this court.

In 1995, Hooker again filed suit to challenge the constitutionality of out-of-state contributions. *Hooker v. Thompson,* No. 3–95–0688 (M.D. Tenn. April 3, 1996) (*"Hooker II"*). He filed in state court, but the case was removed to federal court, and the court found that Hooker was asserting the same claims he had asserted in his previous case and had been found to lack standing to pursue. The court therefore found that Hooker's claim was barred by issue preclusion on the issue of standing by the prior judgment and dismissed the action.

---

1. Count 1 of the amended complaint purportedly challenged the constitutionality of FECA and of "matching funds." However, the relief requested encompassed FECA (2 U.S.C. § 431 *et seq.*), the Matching Payment Act governing matching funds (26 U.S.C. §§ 9031–9042) and the Presidential Fund Act (26 U.S.C. §§ 9001–9013), which provides for full public funding of presidential campaigns when certain criteria are met. This was likely a typographical error, as Hooker neither discussed nor put forth arguments attacking the Fund Act.

On the basis of the two prior suits and dismissals, the district court in this case held that Hooker was precluded from relitigating his challenge to out-of-state campaign contributions (Counts 2 & 3). Further, the court found that Hooker lacked standing to challenge the Matching Payment Act and the Presidential Fund Act (Count 1), because his alleged injuries were nothing more than general grievances that would affect all citizens and would more appropriately be dealt with by Congress.

After the district court's dismissal, Hooker moved the court to alter or amend its judgment pursuant to FED. R. CIV. P. 59(e), and the court denied the motion. Hooker filed a timely notice of appeal, and soon thereafter he filed a motion under FED. R. CIV. P. 60(b)(6) to set aside the district court's judgment. That motion was denied.

## II

*Preclusion on the issue of whether Hooker had standing to sue as a voter and a candidate to challenge the constitutionality of interstate contributions*

In finding that Hooker was precluded from relitigating the issue of his standing as a voter and potential candidate in a suit challenging the constitutionality of interstate campaign contributions, the district court properly relied upon and applied this court's test for issue preclusion set out in *N.L.R.B. v. Kentucky May Coal Co., Inc.*, 89 F.3d 1235 (6th Cir.1996). Before applying issue preclusion, four factors must be present:

(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;

(2) determination of the issue must have been necessary to the outcome of the prior proceeding;

(3) the prior proceeding must have resulted in a final decision on the merits; and

(4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Id.*, at 1239.

The district court found that all of the factors were present. First, the issue of Hooker's standing as a voter and potential candidate was raised and litigated in *Hooker I*. Second, determination of that issue was necessary to the dismissal of that case. Third, the issue of Hooker's standing was decided on the merits.[2] Finally, Hooker has never contended that he did not have a full and fair opportunity in *Hooker I* to litigate his standing issue.

In sum, issue preclusion applies in the present case, because the plaintiff is attempting to reassert the same claim with unchanged facts supporting his standing. Federal courts have used preclusion to bar litigants who had been found to lack standing in a prior suit from reasserting the same claim in a subsequent suit if the facts presented by the litigants to support

---

2. It is irrelevant that the district court did not reach the underlying merits of Hooker's suits in either *Hooker I* or *Hooker II*, because the court reached the merits of the issue in question—namely, whether Hooker had standing to sue in the case. As the Supreme Court explained in *American Surety Co. v. Baldwin*, 287 U.S. 156, 166, 53 S.Ct. 98, 77 L.Ed. 231 (1932), "[t]he principles of res judicata apply to questions of jurisdiction as well as to other issues," and therefore a decision may have preclusive effect even if the decision is not made on the merits. *Id.*, at 166. The Fifth Circuit later described this type of preclusion as "preclud[ing] a new adjudication of the question actually decided, although it does not 'bar the cause of action.'" *Estevez v. Nabers*, 219 F.2d 321, 324 (5th Cir.1955) (citation omitted).

standing had not changed. See, e.g., *Int'l Primate Prot. League v. Adm'rs of the Tulane Educ. Fund,* No. 91–2966, 1992 WL 329555 (E.D.La. Nov. 2, 1992), *aff'd,* 22 F.3d 1094 (5th Cir.1994), *cert. denied,* 513 U.S. 1032, 115 S.Ct. 613, 130 L.Ed.2d 522 (1994). In the present case, nothing has changed. Just as in *Hooker I,* the plaintiff asserts that interstate campaign contributions are unconstitutional and just as in *Hooker I,* he claims standing based on his status as a voter and a potential candidate for federal office.

### Standing to challenge the constitutionality of FECA and the Matching Payment Act

■ The district court held that Hooker did not have standing to challenge the Acts because he lacked prudential standing to sue. As the district court had written previously, the "Supreme Court has held that an alleged harm which is 'a "generalized grievance" shared in substantially equal measure by all or a large class of citizens' does not warrant the exercise of the court's jurisdiction." *Hooker I,* 893 F.Supp. at 767 (quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). In *Warth,* the Court said such limitations are necessary because otherwise, "the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Warth v. Seldin,* 422 U.S. at 500.

The court properly found that Hooker's claimed injuries were too general to give rise to jurisdiction. As mentioned above and pointed out by the district court, one of Hooker's central grievances with the Acts was that they are based on private election expenditures, which Hooker

claims are themselves unconstitutional "under the Vth and XIVth Amendments as they discriminate among voters based upon wealth and thereby violate the 'one-man, one-vote' requirement in *Baker v. Carr.*" Hooker goes on to complain that the matching funds system "further[s] the interests of the oligarches [sic], ... [and] institutionalizes the participation of the Democratic and Republican political parties in the election process." These are clearly the type of general, non-concrete allegations that the Supreme Court adverted to in *Warth* and, as such, the district court was correct in finding that Hooker lacked standing.

■ While the district court in the present case relied on the prudential requirements for standing in its dismissal of Hooker's case, Hooker does not even fulfill the minimal constitutional requirements for standing in federal courts, as set out by the Supreme Court in *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Those requirements are: (1) the plaintiff must have suffered an injury in fact; (2) there must be a causal connection between the injury and the challenged conduct; and (3) it must be likely that a favorable decision will remedy the injury. *Id.*

In *Lujan,* the Supreme Court clarified that the first requirement, an injury in fact, requires a "concrete and particularized" injury, not merely " 'conjectural' or 'hypothetical.' " *Id.* As evidenced above, none of Hooker's alleged injuries are concrete or particular. For further example, however, Hooker writes in Count 1 of his amended complaint that if matching funds are permitted to be used in the 2000 election, "the rights of the plaintiff/qualified voter will be violated," without any discussion of the nature of these rights or the way in which they would be violated. Equally unhelpful is Hooker's restatement

in his reply brief of the injury alleged—that " 'matching funds' based upon campaign contributions enthrone the 'haves' over the 'have-nots' and pollute the election process by discriminating against each voter in his individual capacity as a voter." In short, Hooker fails to allege any concrete injury that would befall him as a result of the allegedly unconstitutional operation of the public financing statutes.

Hooker is equally unsuccessful in tying the injuries he alleges with the Acts he challenges. As the Court explained in *Lujan*, to show causation, a complainant's injuries must be " 'fairly ... trace[able] to the challenged action of the defendant, and not ... the result [of] the independent action of some third party....' " *Lujan*, 504 U.S. at 560–61 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). As discussed above, Hooker alleges that the Acts "further the interests of the oligarches [sic], ... [and] institutionalize[ ] the participation of the Democratic and Republican political parties in the election process." However, none of the challenged Acts cause the private contributions of which Hooker complains; on the contrary, the Acts are designed to limit the role of private money in the presidential primary process. *See Buckley v. Valeo*, 424 U.S. 1, 91, 96, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

Finally, it is clear that Hooker has failed to fulfill the third requirement for standing, namely that it be likely that a favorable decision will remedy the injury alleged. Since the injuries Hooker alleged were broad and theoretical, and since he showed no link of causation between his general grievances and the Acts he challenges, it follows that it is not likely that a

finding that the Acts are unconstitutional will provide any relief to Hooker's alleged injuries.

## III

Because the district court was correct in holding that Hooker was barred from relitigating the issue of standing in his challenge of the constitutionality of interstate campaign contributions, and because the court was also correct in holding that Hooker lacked standing to bring his challenge to the constitutionality of the campaign financing acts, the dismissal of Hooker's case is AFFIRMED.